**GOVERNMENT FINANCE OFFICERS ASSOCIATION, City of Atlanta, National League of Cities, and State of Georgia, Plaintiffs,**

v.

**The UNITED STATES and James A. Baker III, In His Official Capacity As Secretary of the Treasury, Defendants.**

**Civ. A. No. 1:87–CV–1942–RHH.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Feb. 3, 1988.

Griffin B. Bell, King & Spalding, Charles F. Barnwell, Atlanta, Ga., Theodore M. Hester, Washington, D.C., Michael J. Bowers, Office of Atty' Gen., Atlanta, Ga. for plaintiffs.

Sharon Douglas Stokes, U.S. Atty., Atlanta, Ga., John J. McCarthy, Dept. of Justice, Washington, D.C., for defendants.

## ORDER

ROBERT H. HALL, District Judge.

Plaintiffs bring this action alleging two provisions of the Tax Reform Act of 1986 are unconstitutional and seeking a declaratory judgment that the provisions are of no force and effect. This court's jurisdiction is predicated upon 28 U.S.C. § 1331 on the ground that this is a civil action arising under the Constitution and statutes of the United States. Currently before the court are plaintiffs' motion for leave to amend the complaint and defendants' motion to dismiss. For the reasons stated herein, the court GRANTS plaintiffs' motion and PARTIALLY GRANTS and PARTIALLY DENIES defendants' motion.

FACTUAL BACKGROUND [1]

In 1986 the United States Congress passed, and the President signed into law, the Tax Reform Act of 1986 ("Act"). The Act brought about comprehensive alterations in the Internal Revenue Code of 1954 ("Code"). Plaintiffs in this action challenge the constitutionality of two Code provisions as amended by the Act, Pub.L. No. 99–514, § 701(a), 100 Stat. 2321, 2320: The Alternative Minimum Tax ("AMT") provision of Internal Revenue Code ("IRC") § 55 and the Arbitrage Tax provision of IRC § 103(c). Plaintiffs contend that both Code sections, as amended by the Act, interfere with the ways and means selected by state and local governments, including Georgia and Atlanta, for financing basic government functions.

The plaintiffs in this action are: the Government Finance Officers Association

[1]. This factual background is drawn entirely from the complaint. Because this action is before the court on a motion to dismiss, the court accepts the facts in the complaint as true for purposes of ruling on the motion.

("GFOA"), a not-for-profit corporation whose active members are public officials having responsibility for government finance; the City of Atlanta; the National League of Cities, a not-for-profit corporation whose members include almost 1400 cities and, through its affiliated state municipal leagues, an additional 15,000 municipalities; and the State of Georgia. Since passage of the Act, Georgia and Atlanta have issued general obligation bonds in order to apply the proceeds to public purposes such as highway, road and bridge construction or reconstruction, renovation and construction of public schools and universities and other public buildings (jails, city hall, offices of Department of Natural Resources), and maintenance of water and sewer systems.

Plaintiffs contend that the above purposes for which the proceeds of state and city bonds will be used are all basic functions of the governments of Georgia and Atlanta. They further allege that the amended AMT and Arbitrage Tax provisions substantially interfere with or render impossible the ability of Georgia and Atlanta, among other states and cities, to obtain the ways and means of financing these and other basic government functions. In addition, plaintiffs contend that the provisions of the Act imposing the Arbitrage Tax and AMT usurp the ability of states and cities to make decisions regarding what constitutes basic government functions and violate principles of federalism.

The Alternative Minimum Tax provisions of the Code, as amended by the Act, impose a tax on the interest paid to bondholders by cities and states on bonds issued or to be issued by the latter since the Act went into effect. Individuals who hold state or local bonds are required by the Act to pay tax on the interest received on "specified private activity" bonds (such as Hartsfield Airport Bonds), as defined in IRC § 57(a)(5)(C) and 141. Likewise, the Act provides that interest received by corporations on state and local government "private activity" bonds is included as a specific preference item in the corporation's alternative minimum taxable income. Furthermore, corporations, whose AMT is affected by their "book income," must include in the calculation of book income interest paid on all state and local government bonds.

Unlike the AMT, which requires bondholders to pay a tax on the interest they receive on certain state and local bonds, the Arbitrage Tax provisions of the Act require states and cities to pay a tax directly to the United States. State and local governments must pay to the federal government a tax on any spread between the amounts they receive from temporarily investing the proceeds of the bonds they issued to the public and the amounts they would have received had the proceeds been placed in investments carrying the same yield as the state and local bonds issued. Plaintiffs contend that, in practical effect, the Act's Arbitrage Tax provisions require states and municipalities to pay a tax to the United States which is equal to any amounts they receive over and above their own interest costs on the bonds they issue to the public.

Plaintiffs allege that the Arbitrage Tax and AMT provisions of the Act as described above violate the Tenth Amendment and Constitutional principles of federalism on the ground that the imposition of such taxes interfere with the ways and means selected by states and cities for financing basic government functions. Plaintiffs further allege that the provisions are unconstitutional under the doctrine of implied reciprocal immunity. Plaintiffs suggest that the AMT is discriminatory (and thus in violation of the doctrine of implied reciprocal immunity) because it grants Congress the right to tax interest paid by state and local governments while prohibiting those governments from taxing interest paid by the federal government. Plaintiffs also argue that the Arbitrage Tax is unconstitutional under the doctrine of implied reciprocal immunity because it allegedly imposes a direct tax on state and local government property which is used for basic government functions. Finally, plaintiffs contend the Act's provisions at issue violate Georgia's rights under the guaranty clause of the Constitution.

In their complaint, plaintiffs seek a declaratory judgment that the provisions of the AMT and Arbitrage Tax as amended by the Act are unconstitutional and have no force and effect. Plaintiffs move for leave to amend the complaint to add a prayer for injunctive relief enjoining James A. Baker III, who allegedly has acted unconstitutionally by taking affirmative steps to enforce the relevant AMT and Arbitrage Tax provisions, from further enforcing the provisions. Defendants move the court to dismiss: defendant James A. Baker III as an improper party; the United States of America as immune from suit; plaintiffs GFOA and NLC for lack of standing; and the complaint for lack of subject matter jurisdiction.

## DISCUSSION

### I. *Plaintiffs' Motion*

Plaintiffs move for leave to amend the complaint to add a prayer for relief and cure a deficiency in the complaint regarding defendant Baker. Plaintiffs request leave to add a paragraph alleging defendant Baker is taking affirmative steps to enforce the AMT and Arbitrage Tax provisions which plaintiffs attack and is thereby acting unconstitutionally. Plaintiffs further seek to amend the complaint to add a prayer that the court enter judgment enjoining defendant Baker from enforcing the allegedly unconstitutional provisions of the AMT and Arbitrage Tax. In all other respects the complaint would remain the same.

■ Defendants failed to respond to plaintiffs' motion for leave to amend the complaint. On that basis alone, the court could deem the motion unopposed and grant it. *See* N.D.Ga. Local Rule 220–1(b)(1). The decision of whether to grant or deny a motion for leave to amend a pleading is within the court's discretion. However, the federal rules provide that "leave *shall* be freely given when justice so requires." Fed.R.Civ.P. 15(a) (emphasis supplied). Given that plaintiffs have "at least a colorable ground for relief" and are not "guilty of undue delay or bad faith," *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962), justice does

require that leave be granted and therefore the court GRANTS plaintiffs' motion.

### II. *Defendants' Motion*

#### A. Motion to Dismiss Both Defendants

Defendants contend, and plaintiffs do not dispute, that the United States, as a sovereign, is immune from suit unless it unequivocally states a waiver of sovereign immunity and consents to be sued. Plaintiffs failed to respond to defendants motion to dismiss the United States and they have not alleged any facts which would support a finding that the United States waived its sovereign immunity. Therefore, the court DISMISSES the complaint against the United States of America.

■ Defendants also argue that the complaint against the Secretary of the Treasury, James A. Baker III, should be dismissed because he is not a proper defendant. The only grounds to support their contention that defendant Baker is not a proper party are that the complaint neither seeks relief against defendant Baker nor alleges that he is committing any illegal act. Defendants do recognize, however, that a federal official may be named as a defendant in a federal tax dispute if a plaintiff seeks to enjoin the official from committing an allegedly illegal act. Because this court granted plaintiffs' motion for leave to amend the complaint to state a claim alleging defendant Baker is acting unconstitutionally and seeking an injunction against him, defendant Baker is now a proper party-defendant in this action.

#### B. Motion to Dismiss GFOA and NLC

Defendants move the court to dismiss the complaint as brought by GFOA and NLC on the ground that they lack standing to bring the instant suit. Defendants argue that "the statutes in question have no direct tax ... or economic consequences to the [GFOA] or to the [NLC]. Rather, the alleged injuries complained of herein are to the State of Georgia and the City of Atlanta." Defendants' Brief in Support of Motion to Dismiss. p. 5. Plaintiffs respond to this argument that, while they believe

GFOA and NLC do have standing to bring this suit, the court need not address the issue because the standing of Georgia and Atlanta is clear and undisputed.

Plaintiffs are correct in arguing that courts have declined to address the issue of whether *all* plaintiffs have standing to maintain a suit where at least one plaintiff establishes that he or she clearly has the required standing. *See e.g., Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 264 n. 9, 97 S.Ct. 555, 562 n. 9, 50 L.Ed.2d 450 (1977) (because of presence of plaintiff who demonstrated standing, Court concluded it need not consider whether other plaintiffs had standing); *Carey v. Population Services, International*, 431 U.S. 678, 682 n. 2, 97 S.Ct. 2010, 2014 n. 2, 52 L.Ed.2d 675 (1977) (Court noted that district court held that two parties had standing and therefore found it unnecessary to decide standing of other plaintiffs). This court finds, however, that even if it does address the issue of GFOA's and NLC's standing, all four plaintiffs clearly have standing to maintain this suit.

Defendants, citing the fundamental standing principle that a plaintiff must show that he has suffered some real or threatened injury in order to prove his standing to bring a suit, state that neither GFOA nor NLC is affected by the tax statutes at question. Defendants' argument is disingenuous and completely overlooks a line of Supreme Court precedent holding that "an organization whose members are injured may represent those members in a proceeding for judicial review." *Sierra Club v. Morton*, 405 U.S. 727, 739, 92 S.Ct. 1361, 1368, 31 L.Ed.2d 636 (1972) (*citing, NAACP v. Button*, 371 U.S. 415, 428, 83 S.Ct. 328, 335, 9 L.Ed.2d 405).

Indeed, in the case cited by defendants to support their argument that GFOA and NLC lack standing, the Supreme Court noted that an organization that alleges no injury to itself distinct from the injury to its members can claim standing provided its members have standing. *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 476 n. 14, 102 S.Ct. 752, 761 n. 14, 70 L.Ed.2d 700 (1982). Citing *Sierra Club, supra,* and quoting *Warth v. Seldin*, 422 U.S. 490, 511, 95 S.Ct. 2197, 2211–12, 45 L.Ed.2d 343, the Supreme Court in *Valley Forge* noted that the question whether an organization has standing to maintain a suit turns on whether "its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit." *Id.*

■ In the instant action, the complaint alleges that the subject tax provisions interfere with the ways and means selected by state and local governments for financing basic government functions. Although defendants argue the alleged injuries complained of affect only Atlanta and Georgia, the complaint, while alleging very specific injuries to Georgia and Atlanta, does allege that the AMT and Arbitrage Tax provisions are unconstitutional with respect to bonds issued by other state and local governments as well. See First Amended Complaint, ¶¶ 1, 55, 63 and Fifth Prayer for Relief. Both GFOA and NLC are organizations that represent members (cities, municipalities and their finance officers) who allegedly suffer "some actual or threatened injury as a result of the putatively illegal conduct of the defendant...." *Valley Forge, supra,* 454 U.S. at 472, 102 S.Ct. at 758–759. Therefore, GFOA and NLC may represent their members in this action and have standing to maintain this suit.

## C. Lack of Subject Matter Jurisdiction

Defendants move to dismiss the complaint on the ground this court lacks jurisdiction to entertain the action. In their original complaint, plaintiffs sought only a declaratory judgment. Defendants argue that this court lacks jurisdiction to issue a declaratory judgment as a result of the federal tax exception to the Declaratory Judgment Act, 28 U.S.C. § 2201. The Declaratory Judgment Act provides

"In a case of actual controversy within its jurisdiction, *except with respect to federal taxes* ..., any court of the Unit-

ed States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

28 U.S.C. § 2201(a) (emphasis supplied). With respect to the amended complaint and plaintiffs' prayer for injunctive relief, defendants make a similar argument. Like the Declaratory Judgment Act, the Anti–Injunction Act proscribes federal courts from exercising jurisdiction over suits brought "for the purpose of restraining the assessment or collection of any tax...." 26 U.S.C. § 7421(a).

The prohibitions in both Acts on their face divest this court of jurisdiction to hear any tax suit for declaratory or injunctive relief. The Supreme Court, however, has created an exception to the jurisdiction prohibition contained in the Anti–Injunction Act. In *South Carolina v. Regan*, 465 U.S. 367, 104 S.Ct. 1107, 79 L.Ed.2d 372 (1984), the Supreme Court analyzed the circumstances surrounding the enactment of the Anti–Injunction Act as well as Supreme Court precedent interpreting the jurisdictional proscription, and held that "Congress did not intend the Act to apply where an aggrieved party would be required to depend on the mere possibility of persuading a third party to assert his claims. Rather, the Act was intended to apply only when Congress has provided an alternative avenue for an aggrieved party to litigate its claims on its own behalf." *Id.* at 381, 104 S.Ct. at 1115–1116.

In *South Carolina*, the Court allowed the state to file a complaint challenging a provision of the Tax Equity and Fiscal Responsibility Act of 1982 despite the tax exception to jurisdiction contained in the Anti–Injunction Act. In that case, South Carolina, as the non-taxpayer, had no alternative forum in which to litigate its claims. The tax provision at issue affected only the tax liability of purchasers of state and local bonds and therefore, South Carolina could only argue its case through a third party

taxpayer if it could persuade the taxpayer to litigate the matter.

In the instant case, the *South Carolina* exception clearly applies to plaintiffs' AMT claim and prayer for injunctive relief. The AMT provisions impose tax on individual and corporate purchasers of state and local bonds. The states and cities themselves are not "taxpayers" with respect to the AMT provisions at issue. Instead, the states and cities are third parties attempting to litigate the tax liability of other persons against whom the tax is assessed. Therefore, plaintiffs have no alternative avenue by which to contest the legality of the AMT as amended by the 1986 Tax Reform Act. Because plaintiffs amended their complaint to add a prayer for relief enjoining the Secretary of the Treasury from enforcing the AMT provisions at issue, the *South Carolina* holding is directly on point and this court may entertain jurisdiction of the AMT injunctive relief claim.

Unlike the AMT, however, the Arbitrage Tax is a direct tax on state and local governments. If states and cities do not pay to the federal government the rebate amount set forth in IRC § 148(f)(2) and (3), they may be required to pay a penalty to the United States. IRC § 148(f)(7). In either case, the state and local governments, rather than a third party, are the entities against whom the taxes are assessed. As taxpayers exposed to liability under the Arbitrage Tax provisions, state and local governments have avenues open to them in which to contest the tax's legality. Like any other taxpayer, they could either bring a timely suit in tax court or pay the tax and sue for a refund in district court or court of claims. *See Leves v. Internal Revenue Service Commissioner*, 796 F.2d 1433 (11th Cir.1986). Therefore, the Anti–Injunction Act applies to prohibit this court from exercising jurisdiction over plaintiffs' Arbitrage Tax claims.

In their amended complaint, plaintiffs added a prayer for injunctive relief and retained their request for declaratory judgment. Although the *South Carolina* holding was limited to carving out an exception to the exception in the Anti–Injunction Act

only, plaintiffs seek to apply the rationale to the Declaratory Judgment Act as well. Plaintiffs argue that because "there is little practical difference between injunctive and declaratory relief ...," *California v. Grace Brethren Church*, 457 U.S. 393, 408, 102 S.Ct. 2498, 2507–08, 73 L.Ed.2d 93 (1982), the *South Carolina* holding can logically be extended to apply to the Declaratory Judgment Act.

The Supreme Court in *South Carolina* could have applied its rationale to both the Anti–Injunction Act and the Declaratory Judgment Act because plaintiff in that case sought both forms of relief and the government argued, as it does here, that both Acts prohibit courts from exercising jurisdiction over tax cases. Instead, the Supreme Court in *South Carolina* stated in a footnote, "Because of our disposition of the case, we need not decide at this time whether we may grant declaratory relief should plaintiff prevail on the merits." 465 U.S. at 370 n. 2, 104 S.Ct. at 110. Moreover, in reaching its conclusion that there exists a limited exception to the Anti–Injunction Act prohibition against tax suits, the Court analyzed the circumstances surrounding the enactment of the Act. The Court specifically noted that "the indicia of Congressional intent—the Act's purposes and the circumstances of its enactment ..." warranted the court's holding. Thus, the Supreme Court strictly limited its holding to the Anti–Injunction Act.

On at least two other occasions the Supreme Court specifically declined to hold that, with respect to the prohibitions on jurisdiction, the Anti–Injunctive Act and Declaratory Judgment Act are coextensive. In both *Bob Jones University v. Simon*, 416 U.S. 725, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974), and *Alexander v. "Americans United" Inc.*, 416 U.S. 752, 94 S.Ct. 2053, 40 L.Ed.2d 518 (1974), the Court noted that some lower courts have held that the federal tax exceptions to both Acts have coterminous application while some authorities have taken the position that the tax exception to the Declaratory Judgment may be more sweeping than the Anti–Injunction Act. In any event, the Supreme Court declined to resolve whether the Declaratory

Judgment Act is more preclusive, concluding instead that "the federal tax exception to the Declaratory Judgment Act is at least as broad as the [prohibition of the] Anti–Injunction Act." 416 U.S. at 733 n. 7, 94 S.Ct. at 2044; 416 U.S. at 759 n. 10, 94 S.Ct. at 2057–2058 n. 10.

■ This court declines to extend the *South Carolina* exception to the Declaratory Judgment Act's federal tax prohibition on jurisdiction. Had the Supreme Court desired to carve out an exception to the exception in both the Anti–Injunction Act and the Declaratory Judgment Act, it could have done so in *South Carolina*. Furthermore, the Supreme Court has not rejected the proposition that the jurisdictional prohibition in the Declaratory Judgment Act is more stringent than the Anti–Injunction Act. Finally, the Court has repeatedly recognized "the powerful governmental interests in protecting the administration of the tax system from premature judicial interference...." *Bob Jones University, supra,* 416 U.S. at 747, 94 S.Ct. at 2051 (*citing Cheatham v. United States,* 92 U.S. (2 Otto) 85, 88–89, 23 L.Ed. 561 (1875); *State Railroad Tax Case,* 92 U.S. (2 Otto) 575, 613–614, 23 L.Ed. 663 (1875)).

Because Congress has statutorily limited this court's jurisdiction to hear tax cases and the Supreme Court has carved out only a narrow exception to that prohibition, this court lacks jurisdiction over plaintiffs claims for declaratory judgment. For the above reasons the court PARTIALLY GRANTS and PARTIALLY DENIES defendants' motion to dismiss.

CONCLUSION

In sum, the court GRANTS plaintiffs' motion for leave to amend the complaint. The court PARTIALLY GRANTS defendants' motion to dismiss and DISMISSES the complaint against the United States and DISMISSES the complaint insofar as it seeks declaratory judgment and challenges the constitutionality of the Arbitrage Tax. The only claim remaining is for injunctive relief against defendant Baker with respect

to the alleged unconstitutionality of the AMT.